IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF HAWAIʻI

| | |
|---|---|
| TAJSHA S. BIDASHA DOMINGO,<br><br>Plaintiff,<br><br>vs.<br><br>GATE GOURMET, INC.,<br><br>Defendant. | Civil No. 25-00054 MWJS-RT<br><br>ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT |

**INTRODUCTION**

Tajsha S. Bidasha Domingo ("Domingo"), a former food preparer at Gate Gourmet, Inc., alleges that she was sexually harassed by her supervisor on two occasions. She never reported the incidents, but months later, she stopped appearing for work and was eventually terminated.

Domingo has since sued over the alleged harassment. But she did not bring a lawsuit against her former supervisor. Instead, she sued her former employer, Gate Gourmet. Gate Gourmet now moves for summary judgment, arguing that Domingo fails to make a satisfactory claim for sex discrimination, sexual harassment, and a hostile work environment. Gate Gourmet also contends that it should prevail as a matter of law on an affirmative defense to vicarious liability.

Domingo has failed to meaningfully respond to Gate Gourmet's assertion of an affirmative defense, and Gate Gourmet has shown that it would have prevailed as a

matter of law even if Domingo had not abandoned any opposition to the affirmative defense. For these reasons, Gate Gourmet's motion for summary judgment is GRANTED.

## BACKGROUND

Given the court's obligation at summary judgment to "view the evidence, including all reasonable inferences, in favor of the non-moving party," *Hum. Rts. Def. Ctr., Inc. v. Uttecht*, 161 F.4th 1141, 1152 (9th Cir. 2025) (cleaned up), it assumes the following facts to be true.

In August 2022, Domingo was hired as a Food Preparation Specialist for Gate Gourmet. Dkt. No. 1, at PageID.2. She worked in a cooler room preparing meals for commercial flights. Dkt. 43, at PageID.176. Domingo's direct supervisors were two women, and Tim Gallegos, a man, was their higher-level supervisor. *Id.* Gate Gourmet has an anti-harassment policy, which, among other things, prohibits unwelcome sexual advances, hugging, and groaning. Dkt. No. 45, at PageID.322; *see also* Dkt. No. 43, at PageID.241.

While Domingo regularly interacted with her two direct female supervisors, Domingo had a few run-ins with Gallegos. And two of them, Domingo explains, constituted harassment and created a hostile work environment. The first occurred one morning in September 2022 after Domingo returned from sick leave. As Domingo describes it, Gallegos "hug[ged] [her], and he shimmied [her] body and was pressing

[her] against him and moaned." *Id.* at PageID.207. Gallegos walked away and Domingo was "in shock." *Id.* at PageID.210. But Domingo never reported the incident at work. Dkt. No. 45, at PageID.320.

The second occurred on December 1, 2022, a week before the company Christmas party. Domingo alleges that Gallegos asked her at work, "Do you want to have a drink sometime? I know a place." Dkt. No. 46, at PageID.335.[1] Once again, Domingo never reported Gallegos' action to any Gate Gourmet employees. Dkt. No. 45, at PageID.323.

Domingo did report the incidents to her long-time psychologist, *id.* at PageID.326, but even then, she continued working at Gate Gourmet. Only months later, in February 2023, did Domingo stop showing up at work. She last clocked in on February 17, 2023. Dkt. No. 43, at PageID.178. After using various forms of leave (i.e., funeral leave and sick leave) and having five no shows, Domingo was terminated by Gate Gourmet on March 21, 2023. *Id.* She consequently filed a sex discrimination charge with the EEOC, which was dismissed on January 22, 2025. Dkt. No. 1, at PageID.2. As Domingo asserts, the "continued unwelcomed sexual advances and discriminatory environment made [her] working conditions so intolerable that she was forced to quit." *Id.* at PageID.3.

---

[1] Later that day, Domingo texted Gallegos, "On Thursday the 8th we drink [beer emoji]," and "Xmas [confetti emoji] party." Dkt. No. 43, at PageID.177. But Domingo asserts that she meant this text for someone else, and at the summary judgment stage, the court draws all inferences in Domingo's favor.

## SUMMARY JUDGMENT STANDARD

Summary judgment is warranted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The court takes the requirement that there be "no *genuine* issue of *material* fact" seriously. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–48 (1986). Where "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party," there is a genuine dispute of material fact. *Id.* at 249–50. And where there are "*some* alleged factual dispute[s] between the parties," but these disputes are neither genuine nor material, summary judgment is warranted. *Id.* at 247–48.

Summary judgment is also appropriate against a party that "fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The court may also grant summary judgment on the basis of an affirmative defense. *Dam v. Gen. Elec. Co.*, 265 F.2d 612, 614 (9th Cir. 1958).

## DISCUSSION

Gate Gourmet seeks summary judgment on Domingo's sex discrimination, hostile work environment, and sexual harassment claims, arguing that Domingo fails to make out a prima facie case for each of these claims. Dkt. No. 42, at PageID.8, 13, 25. Before delving into the particulars of these claims, the court turns to a threshold question: whether Gate Gourmet could be held vicariously liable at all. In other words,

does Gate Gourmet have an affirmative defense to vicarious liability on which it should prevail at summary judgment? The court concludes that it does.

### A. Domingo Has Forfeited Any Opposition to Gate Gourmet's *Faragher/Ellerth* Defense to Vicarious Liability

As the Supreme Court recognized in a pair of pathmarking decisions nearly thirty years ago, "[a]n employer is subject to vicarious liability to a victimized employee for an actionable hostile environment created by a supervisor with immediate (or successively higher) authority over the employee." *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998); *see also Burlington Indus., Inc. v. Ellerth*, 524 U.S. 742 (1998). But the Court also recognized a limit to that liability: an employer may raise an affirmative defense to vicarious liability or damages so long as the "supervisor harassment . . . does not culminate in a tangible employment action." *Ellerth*, 524 U.S. at 763, 765. This limit reflects the judgment that an employer should not be allowed to escape vicarious liability if its supervisor effectuates their discrimination or harassment by "bring[ing] the official power of the enterprise to bear on subordinates." *Id.* at 762. *See generally Holly D. v. Cal. Inst. of Tech.*, 339 F.3d 1158, 1167 (9th Cir. 2003) (offering the example of a supervisor who "abuses his authority to act on his employer's behalf by threatening to fire a subordinate if she refuses to participate in sexual acts with him, and then actually fires her when she continues to resist his demands").

And so to prevail on this defense—which is now commonly referred to as the *Faragher/Ellerth* defense, in a nod to the cases that recognized it—the employer must

first show that a supervisor's discriminatory or harassing conduct did not involve or culminate in a tangible employment action. If that threshold showing is made, the employer must make two more: "(a) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Craig v. M & O Agencies, Inc.*, 496 F.3d 1047, 1055 (9th Cir. 2007) (cleaned up).

Here, Domingo sues her former employer Gate Gourmet, not the individual responsible for the conduct undergirding her claims. That choice was compelled by her decision to bring only claims under Title VII, which limits liability to employers and "does not provide a separate cause of action against supervisors or co-workers." *Id.* at 1058. But that choice requires Domingo to rely on vicarious liability to prevail on any of her claims. And in its motion for summary judgment, Gate Gourmet raises the *Faragher/Ellerth* affirmative defense to vicarious liability, first by contending that the alleged conduct of Gallegos did not culminate in any "tangible employment action" against Domingo, and then by arguing that it complied with its duties of reasonable care while Domingo did not. *See* Dkt. No. 42, at PageID.165–68.

Domingo's opposition briefing failed to raise a meaningful argument responding to the *Faragher/Ellerth* defense and thus abandoned the argument. *See Jarvis v. Corteva Agriscience, LLC*, 2025 WL 1312119, at *3 (D. Haw. May 6, 2025) ("[I]f the non-moving

party altogether fails to defend claims or forms of relief against which summary judgment has been sought they are deemed 'abandoned.'") (citation omitted); *Pac. Dawn LLC v. Pritzker*, 831 F.3d 1166, 1178 n.7 (9th Cir. 2016) (noting that where plaintiffs did not raise an argument in "opposition to the defendant's motion for summary judgment, . . . the argument was waived"). Indeed, Domingo merely states that "since Gallegos was Domingo's supervisor, [Gate Gourmet] is vicariously liable for his conduct." Dkt. No. 46, at PageID.346. Not only is that passing statement an insufficient response, but it is also not legally accurate: the *Faragher/Ellerth* defense can sometimes be available even in the face of a supervisor's unlawful conduct. *See Craig*, 496 F.3d at 1055. In fact, it is available precisely in the circumstances that Gate Gourmet asserts exist here: when no tangible employment action has been taken. *Id.* In these circumstances, then, Domingo has abandoned any opposition to Gate Gourmet's affirmative defense.

At the hearing on Gate Gourmet's motion, Domingo's counsel acknowledged not having meaningfully addressed the affirmative defense in his written submissions, and further acknowledged that this omission was not the result of any action Gate Gourmet had taken (whether in discovery or in the clarity of its own briefing). And while Domingo's counsel was commendably candid in acknowledging the omission, he did not offer any justifiable basis on which this court might have excused it. Accordingly,

the court will rule in favor of Gate Gourmet on its affirmative defense, which in turn requires the court to grant summary judgment on each of Domingo's claims.

### B. Gate Gourmet Would Have Prevailed on its *Faragher/Ellerth* Defense as a Matter of Law Even if Domingo Had Not Abandoned Any Opposition

Abandonment aside, however, Gate Gourmet would have prevailed on the merits of its affirmative defense even if Domingo had raised an argument against it.

#### 1. Because There Was No Tangible Employment Action Related to the Alleged Harassment, Gate Gourmet Is Entitled to Assert the *Faragher/Ellerth* Defense

As an initial matter, Gate Gourmet is correct that the evidence presented here would not permit a rational jury to find that the alleged harassment either involved or "culminate[d] in a tangible employment action." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1097 (9th Cir. 2008) (cleaned up). To be sure, Domingo was ultimately terminated by Gate Gourmet and termination *could*, depending on the evidence in a case, qualify as a "tangible employment action." *Ellerth*, 524 U.S. at 761. But it does not qualify as a tangible employment action here, because no rational jury could find that it was the "culminat[ion]" of or involved in the alleged harassment. *Davis*, 520 F.3d at 1097.

The evidence presented here does not rationally support the inference that Domingo's termination was related to the harassment. The initial episode of alleged harassment occurred in September 2022 and the second in early December 2022. Dkt. No. 43, at PageID.177. Although harassing conduct surely can sometimes cause an employee to stop coming to work, it did not do so here. Indeed, Domingo testified in

her deposition that she felt "very uncomfortable" since the alleged assault by Gallegos, but she continued to come to work through December 2022 and January 2023. And while Domingo stopped coming to work in February 2023, she has offered no evidence to support an inference that this sudden break was caused by the alleged harassment that had ended more than two months earlier—and that had not previously required her to miss work. *Id.* at PageID.187. Nor does she allege that she faced any punitive measures, such as a demotion, reassignment, or cut in pay or benefits before her termination. *Id.* at PageID.304. Instead, the record suggests that Domingo called out sick at Gate Gourmet after February 17, 2023 because she started a new job that better accommodated her medical condition and preferred schedule. *Id.* at PageID.235, 252.[2] On this evidentiary record, then, a rational jury could only conclude that when Domingo abruptly stopped coming to work in February 2023, it was *not* because of alleged harassment that ended in early December 2022. And when Gate Gourmet finally terminated Domingo, it did so because of her consecutive no-shows, not because

---

[2] In arguing in favor of her constructive discharge theory (though not in response to Gate Gourmet's affirmative defense), Domingo asserts in her opposition that she "quit her job at the recommendation of her treating psychologist." Dkt. No. 46, at PageID.347; *see also id.* at PageID.344–45. And in a declaration attached to her opposition, Domingo's psychologist attests that he recommended "that [Domingo] find a job elsewhere when possible to get out of the environment with that employer." Dkt. No. 45, at PageID.326. Without deciding the validity of the psychologist's declaration—which Gate Gourmet challenges as a sham affidavit—a rational juror could not, in reliance on this declaration and the entire record presented here, infer that Domingo's termination was the culmination of Gallegos' challenged actions.

of any harassment or anything caused by harassment. *See Id.* at PageID.269, 304. Thus the termination does not qualify as a tangible employment action taken as part of or as a culmination of any alleged discrimination, hostile work environment, or harassment.

The Ninth Circuit has reached similar conclusions in other cases. In *Craig*, for instance, the Ninth Circuit accepted an employer's right to assert the *Faragher/Ellerth* defense where the employee alleging harassment had resigned due to medical problems and stress. 496 F.3d at 1053. In a similar vein, in *Nichols*, an employer terminated an employee suing the employer for sexual harassment after the employee got into a heated argument with an assistant manager and walked off the job. *Nichols v. Azteca Rest. Enters., Inc.*, 256 F.3d 864, 871 (9th Cir. 2001). Although the employee had been terminated, the Ninth Circuit held that where a plaintiff's termination "was unrelated to any harassment or complaint thereof," and where the plaintiff "was not demoted or reassigned, and did not receive a cut in pay or benefits" before being fired, there is no "tangible adverse employment action" precluding an employer from asserting the *Faragher/Ellerth* defense. *Id.* at 877. The same is true here.

Domingo does not address any of the foregoing in her briefing, though she acknowledges that Gate Gourmet terminated her. She does offer the argument (in support of her constructive discharge theory only) that by the time the termination happened, she "had already quit her job." Dkt. No. 46, at PageID.337. But even if this were the case—though the record does not support this conclusion, as Domingo did not

submit a resignation letter or notify anyone that she had quit—her decision to quit does not convert Gate Gourmet's acceptance of that decision into a qualifying "tangible employment action." *Ellerth*, 524 U.S. at 761; Dkt. No. 42, at PageID.171; Dkt. No. 43, at PageID.230.

**2. Gate Gourmet Has Made the Required Showings to Prevail on its *Faragher/Ellerth* Defense Claim as a Matter of Law**

Since there was no tangible adverse employment action taken in connection with the alleged harassment, Gate Gourmet is free to invoke the *Faragher/Ellerth* defense. The remaining question, had Domingo preserved the point, would have been whether Gate Gourmet should prevail on that defense as a matter of law.

Gate Gourmet satisfies the first prong of the defense: the evidence establishes as a matter of law that it exercised reasonable care to prevent and correct any harassing behavior by implementing its anti-harassment policy. Where an employer's policy "(1) defined sexual harassment; (2) set forth a reporting procedure; (3) stated that employees who violate the policy will be disciplined; and (4) assured employees that no reprisals would be made against them solely for making a complaint of sexual harassment," the employer sufficiently showed that it "exercised reasonable care to prevent sexual harassment." *Nichols*, 256 F.3d at 877 (cleaned up). Such is the case here. When Domingo started her employment with Gate Gourmet, she signed a form acknowledging Gate Gourmet's Anti-Harassment Policy (Policy), and she confirmed this acknowledgment and her understanding of the Policy during her deposition. Dkt.

No. 43, at PageID.237–41, 261. This Policy defines sexual harassment, mandates reporting, states potential disciplinary measures, and prohibits retaliation. *Id.* at PageID.265–66. As such, Gate Gourmet has satisfied its burden of establishing that it "exercised reasonable care to prevent sexual harassment." *Nichols*, 256 F.3d at 877. And Domingo has identified no genuine dispute of material fact on this prong.[3]

To the extent that courts have concluded that employers with such policies in place have still failed to provide reasonable care, those situations involved instances where employers were notified of the harassment and failed to sufficiently act on it. *See id.* at 871, 877 (discussing how despite the policy and plaintiff's multiple complaints to managers and human resources, the harassment continued). That is far from the scenario here, as Gate Gourmet was not notified of the harassment and thus had no opportunity to act on it.

For the second prong of the *Faragher/Ellerth* defense, the court looks to Domingo's actions. Where an employee fails to use a complaint procedure provided by the employer, such inaction "will normally suffice to satisfy the employer's burden

---

[3] At the motion for summary judgment hearing, Domingo argued—for the first time—that there was a genuine dispute of material fact about whether Gate Gourmet had educated Gallegos about the Anti-Harassment policy. But Domingo cites no law establishing that educating the alleged harasser is a consideration for the reasonableness of an employer's actions in the first prong. And even if Domingo had offered such support at the hearing, she abandoned reliance upon it "by not raising [it] in [written] opposition to [Gate Gourmet's] motion for summary judgment." *Shakur v. Schriro*, 514 F.3d 878, 892 (9th Cir. 2008) (cleaned up).

under the second element of the defense." *Nichols*, 256 F.3d at 877; *Kohler v. Inter-Tel Techs.*, 244 F.3d 1167, 1180–82 (9th Cir. 2001) (holding that failure to report the behavior to the company was unreasonable). Here, Domingo admitted that she did not use the complaint procedure to report any harassment, satisfying Gate Gourmet's burden on the second element. Dkt. No. 46, at PageID.340.

In short, Gate Gourmet has shown that it satisfies both prongs of its *Faragher/Ellerth* defense as a matter of law. So even if Domingo had not abandoned her opposition to this defense, Gate Gourmet would still have prevailed on the merits. And because absence of vicarious liability is an affirmative defense to all the causes of action asserted here—sex discrimination, sexual harassment, and hostile work environment—Gate Gourmet's success on its *Faragher/Ellerth* defense requires dismissal of all claims.

## CONCLUSION

For the foregoing reasons, Gate Gourmet's motion for summary judgment, Dkt. No. 42, is GRANTED.

IT IS SO ORDERED.

DATED: October 23, 2026, at Honolulu, Hawai'i.

/s/ Micah W.J. Smith

Micah W.J. Smith
United States District Judge